## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 21-CR-416 (RDM)** |
| | : | |
| **v.** | : | |
| | : | |
| **DEMARCO T. ALLGOOD,** | : | |
| **NATHANIEL L. HOLMES,** | : | |
| **DONAESHA H. HAWKINS, and** | : | **Next date: August 24, 2021** |
| **MALIK T. HILL,** | : | |
| | : | |
| **Defendants.** | : | |

---

### GOVERNMENT'S RESPONSE TO DEFENDANTS'
### OPPOSITION TO MOTION FOR PROTECTIVE ORDER

The United States, by and through its attorney, the Acting United States Attorney for the District of Columbia, hereby respectfully submits its reply to defendant Nathaniel Holmes' "Opposition to the Government's Motion for Entry of a Blanket Protective Order" ("Holmes Opposition"), ECF No. 41, and defendant DeMarco Allgood's "Response to the Government's Motion for a Protective Order" ("Allgood Opposition"), ECF No. 42, filed through counsel.

As an initial matter, the attached, revised proposed protective order adds an explicit definition for the legal defense team (paragraph 2), adds language to the DOC viewing procedures making clear that a defendant can view the materials outside of the presence of the legal defense team (paragraph 7), and automatically excludes materials derived directly from a defendant or that pertain solely to a defendant (paragraph 9). Defendant Allgood's proposed change regarding the use of confidential information or materials at trial is already incorporated into the proposed order (paragraph 9). As to defendant Allgood's proposed change regarding "all non-government," the government has already, and will continue to, provide names of investigating law enforcement officers and agents. The withholding of such names was never contemplated.

For the reasons stated below, the government otherwise opposes defendant Holmes' proposed protective order, ECF No. 41-1, and the government opposes defendant Allgood's proposed language regarding whether certain redacted materials are covered by the order, ECF No. 42-1 at paragraph 2.[1]

The government's proposed protective order is not a blanket order. The government has been specific about which evidence will be subject to the order and it has provided the reasons why it believes protection is warranted. *See* Gov't Mot., ECF No. 38 at 2-4, 13. The government has never asserted that *all* discovery, body worn camera or otherwise, should be subject to a protection order. Moreover, the proposed order does not prevent the defendants from viewing discovery. The government has repeatedly agreed that the defendants have the right to view *all* evidence and the government has provided counsel for each detained defendant with the information necessary to arrange that viewing.[2] The government also included a modification provision, ensuring that defendants can always seek adjustments to the proposed order.

The government's open investigation is just that: an open investigation. Neither the duration of the attack, nor the current physical location of the minor victim changes the important investigative, privacy, and security interests implicated.[3] Thus the government's position remains the same. Allowing the defendants to keep recorded witness statements poses significant security concerns and threatens the integrity of the government's investigation. Furthermore, the

---

[1] The government also incorporates by reference its Motion for Protective Order, filed on August 3, 2021 ("Gov't Mot.). *See* ECF No. 38.

[2] For items not covered by the protective order, such as the discovery provided on or about August 3, 2021, *see* ECF No. 37, the defendants may keep copies of the discovery materials and need not (though they may) utilize the jail viewing procedures.

[3] To clarify the record: the minor victim, with government assistance, no longer lives at the offense location. The minor victim is not in any type of "protective custody" (*see* Holmes Opposition, ECF No. 41 at 2). Additionally, the minor victim's phone was returned to her after examination.

2

defendants should not be allowed to keep copies of body worn camera depicting a minor victim receiving medical attention or keep copies of a minor victim's recorded statements (or transcripts of those statements) describing a traumatizing attack.[4]

To facilitate the flow of discovery, the government has already demonstrated its willingness to provide redactions. Good cause exists in this case not because the government is unwilling to further redact discovery, but because the government believes that some of the discovery in this case warrants protection. Records that include individuals' phone numbers should be protected, regardless of the individuals' involvement in this case.[5] Redacting phone records to provide that protection is indeed time consuming, *and* it also makes very little sense, from the perspective of a defendant assisting with his or her own defense, to provide defendants with redacted phone records in which the only visible number is their own. Appropriately redacting all recorded interviews would significantly delay the discovery process, *and* regardless of redactions, the kidnapping and sexual assault of a minor victim – an open investigation where there are minor witnesses, adult and minor witnesses with security concerns, and multiple suspects at large – warrants additional layers of protection. *See* Crime Victims' Rights Act, 18 U.S.C. § 3771; *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) (determining whether to issue a protective order, courts also consider "the safety of witnesses and others, a particular danger of perjury or witness intimidation, and the protection of information vital to national security."); *United States v. Smith,* 985 F.Supp.2d 506, 520, 531 (S.D.N.Y. 2013), citing *United States v. Bin Laden*, No. 98–CR–1023, 2001 WL 66393, at *2 (S.D.N.Y. Jan. 25, 2001) (noting that the court adopted a

---

[4] The government's reading of defendant Holmes' proposed protective order is that defendants would be permitted to keep copies of confidential materials.

[5] As the government's investigation is ongoing, so too is the assessment of which numbers belong to individuals having some involvement in this case.

protective order because dissemination of discovery materials would "jeopardize the ongoing Government investigation into the activities of alleged associates of the Defendants"). The proposed protective order balances the government's legitimate concerns and obligations with its desire to quickly pass discovery and not unduly limit any defendant's ability to fully review and assess that discovery.

To be sure, the government has significant concerns about allowing the defendants access to audio- and video-recorded statements where defendants can readily see and hear the names, faces, voices, and personally identifiable information (such addresses and dates of birth) of the witnesses in this case.[6] Yet the government has not asked for an order preventing the defendants from having access to any of this material – just from being able to keep it.

The government need not speculate as to the danger posed by the defendants. The government's evidence is clear. The defendants did not act alone. There are suspects at large in the community. With minimal effort and creativity, the defendants can take steps to influence the outcome of the government's ongoing investigation or to embarrass or harass witnesses.[7] Those risks aside, the government has already provided discovery regarding its ongoing investigation, including discovery summarizing the minor victim's and other witnesses' statements. Those redacted materials were provided without protection, and so defendants are in fact able to keep copies and to discuss with counsel. Similarly, defendants are free to take notes and discuss those

---

[6] The government recognizes that many of the individuals involved in this case know one another. However, our investigation has revealed that not all the defendants and targets personally know the minor victim and other witnesses such that they would otherwise have access to confidential information. Regardless, the government has an ongoing duty to protect witnesses' privacy and to ensure that witness statements, even redacted statements, are not disseminated or reproduced.

[7] The government makes no attempt in its motion for a protective order to prove up obstruction; instead, it proffers that such efforts have been reported. The government is working diligently to investigate those allegations and will, consistent with its discovery obligations, disclose any information it learns.

4

notes with the legal defense team, subject to the limitations of the protective order.[8] Should counsel

for any defendant believe it is important to disclose a witness' verbatim statement (as opposed to

discussing the contents of that statement without disclosing the actual recording or transcript)

outside of the legal defense team, then counsel can seek a modification. The government has made

no request that such disclosure "be absolutely prohibited." *See* Holmes' Opposition, ECF No. 41

at 4.

The government carefully considered defendant Allgood's proposed changes regarding

unredacted confidential information, ECF No. 42-1 at paragraph 2, but those changes do not meet

the government's intent of providing protection for certain materials, regardless of redaction. As

stated above, there are some redacted materials, such as those materials outlined in the

government's second discovery letter, ECF No. 37, which can be redated and provided to the

defendants without a protection order. However, there are specific materials,[9] where redaction is

not enough. The government or defense counsel may redact a name, but the minor or adult

witnesses' images are still readily apparent, as is that witness' voice. Based on the government's

reading of defendant Allgood's proposed changes, such a recording would not be subject to the

protective order. Defendants could make copies of those statements or share those statements

outside of the legal defense team (on social media or with co-conspirators). Even with a redacted

witness statement, the defendants and other individuals who obtain a copy of the statement could

---

[8] In other words, a defendant may not write down and keep with him personally identifiable information such as phone numbers or dates of birth. However, that defendant may otherwise take notes for subsequent review and discussion with counsel.

[9] See Paragraph 3 ("Confidential materials also include body worn camera depicting the minor victim, body worn camera capturing witness statements, images of the minor victim, and any non-grand jury audio- or video-recorded witness statements or interviews, such as 911 calls – regardless of whether these items are redacted or contain personally identifiable information."). Practically speaking, this includes the Complainant's recorded statements (6.5 hours), verbatim transcripts of the Complainant's recorded statements (345 pages), BWC containing witness statements (10 hours), and one 911 call.

use context to identify, seek out, and harass witnesses. The government seeks a protective order to prevent a scenario where copies of witnesses' verbatim statements (recordings or transcripts of those recordings) are maintained in an unsecured environment, where those statements can be freely viewed by other inmates or disseminated outside of the jail.

## CONCLUSION

WHEREFORE, the government respectfully requests that the Court issue the revised proposed protective order regarding the disclosure of any confidential materials in this case.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar Number 415793

By:     */s/ Angela N. Buckner*
Emory V. Cole
PA Bar #49136
Angela N. Buckner
DC Bar #1022880
Assistant United States Attorneys
United States Attorney's Office
555 Fourth Street, N.W.
Washington, DC 20530
Phone: (202) 252-2656
Phone: (202) 252-7692