# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        v.<br><br>DEMARCO L. ALLGOOD *et al.*,<br><br>        *Defendants*. | Criminal Action No. 21-416 (RDM) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendants DeMarco Allgood, Nathaniel Holmes, and Malik Hill are charged in a four-count superseding indictment with kidnapping a sixteen-year-old woman, T.L., in violation of 18 U.S.C. §§ 1201(a) & (g).  *See* Dkt. 90.  In the same indictment, Holmes is charged with two counts of first-degree sexual abuse, in violation of D.C. Code §§ 22-3002(a)(1) & (a)(2).[1]  The case is set for trial on May 5, 2022.  All three Defendants have moved to sever the sexual abuse charges and to proceed to trial on the kidnapping charges alone.  *See* Dkt. 65 (Hill); Dkt. 66 (Holmes); Dkt. 71 (Allgood); Dkt. 108 (Hill).  Hill and Allgood also move, in the alternative, to sever Holmes.  *See* Dkt. 65; Dkt. 71; Dkt. 108.

The Court has provided the parties with numerous opportunities to present their views on this issue through briefs, supplemental filings, and oral arguments.  *See* Dkt. 65; Dkt. 66; Dkt. 71; Dkt. 76; Dkt. 108; Dkt. 112; Dkt. 117; Dkt. 124; Dkt. 127; Dkt. 132; *see also* Dkt. 126 (Jan. 31, 2022 Hrg. Tr.); Dkt. 129 (Jan 20, 2022 Hrg. Tr.); Dkt. 133 (Feb. 7, 2022 Hrg. Tr.).  For the

---

[1] The superseding indictment also charges a fourth individual, Donaesha Hawkins, with kidnapping in violation of D.C. law.  *See* Dkt. 90 at 2.  The pending motions do not relate to Hawkins.

following reasons, in addition to those stated on the record during the most recent oral argument, the Court will **DENY** Defendants' motions to sever.

## I. BACKGROUND

The charges in this case are based on events that allegedly occurred on the night of April 20 and the morning of April 21, 2021.  On the night of April 20, Defendants Allgood, Hill, and Holmes allegedly attended a candlelight vigil for their deceased friend, Kerry "Dirty" Odoms, who had been killed.  Dkt. 103 at 1.  The vigil was also attended by a sixteen-year-old woman referred to as T.L., with whom Odoms had allegedly been romantically involved.  *Id.*  According to the government, before Odoms was killed, he "left a bag containing stolen guns and white powder with T.L."  Dkt. 67 at 1–2.

The government maintains that, after the vigil, Allgood approached T.L. and asked her whether Odoms "had left anything with her."  *Id.* at 3.  T.L. said that she would check, "and Allgood put his number in [her] phone."  *Id.*  The two parted ways, and T.L. went home.  *Id.* T.L. tried to ignore Allgood's repeated calls that night, but she "eventually told . . . Allgood that she only had some 'white stuff.'"  *Id.*  Allgood, then, allegedly told T.L. "to let him know if she found anything else in the house."  *Id.*

Unsatisfied, Allgood, Holmes, and Hill allegedly went to T.L.'s apartment at approximately 11:52 p.m., and Allgood demanded, "where the shit at?"  *Id.* at 4.  The men then allegedly "pushed [T.L] through the apartment and searched for the guns."  *Id.*  When T.L. "denied knowing about the guns," Hill, who was allegedly armed, "told Holmes that they should kill" T.L.  *Id.*  At that point, T.L. allegedly told the men that she gave the guns to Witness 1, and they then forced her to call Witness 1 and to tell the witness "that either the guns would turn up or [T.L.] would be dead."  *Id.*  Witness 1 denied knowledge of the guns, despite T.L.'s pleas to tell the men where the guns were located.  *Id.*  While the men allegedly continued to confine T.L.

2

in her apartment, Holmes then called Donaesha Hawkins, who arrived at the apartment at approximately 12:24 a.m. *Id.* When Hawkins entered the apartment, Holmes allegedly told her that T.L. "had 'Dirty's shit' and would not tell [them] where it was." *Id.* Hawkins, in turn, "took off her jacket and started to hit and punch [T.L.] all over her body," and, after T.L. fell to the ground, proceeded to kick her. *Id.* at 4–5. Allgood allegedly "pulled [T.L.] to her feet by [her] hair so that Hawkins could continue beating [her]." Dkt. 1-1 at 5.

When T.L. told the men that Witness 1 had given "the guns to someone who lived in Maryland," Holmes, Allgood, and Hill allegedly told T.L. "to get into a car so that she could lead them to the location." Dkt. 67 at 5. According to the government, T.L. "agreed to take them to Maryland, but only because she did not feel that she had a choice after having been beaten up by Hawkins and held in her apartment." *Id.* T.L. then directed the men to an apartment complex in Suitland, Maryland, "where she believed the guns were." *Id.* Defendants "did not attempt to enter the apartment [complex]"; instead, "after [T.L.] pointed out the building, the group decided to return to D.C." *Id.* During the drive, Holmes allegedly told T.L. that he protected her from "harm by others" and that he was "driving quickly because the other men wanted to kill her." Dkt. 112 at 3. According to the government, "[o]nce back in Washington, D.C., Allgood displayed a gun and told [T.L.] that if the stolen guns did not show up in two to three days, he would kill her." Dkt. 67 at 6.

Upon returning to T.L.'s apartment, Defendants Hill and Allgood "drove away," but Defendant Holmes stayed with T.L. *Id.* The government alleges that Defendant Holmes then sexually assaulted T.L., in part by "threatening [T.L.]" that he would "call back the other men to hurt her" if she did not engage in sexual acts. *Id.* at 7. Holmes also allegedly told T.L., "I just

saved your life.  You could do something . . . just come on" or words to that effect.  Dkt. 112 at 4.

On June 21, 2021, a federal grand jury returned an indictment charging Defendants with one count of kidnapping, in violation of 18 U.S.C. § 1201(a)(1).  Dkt. 17 at 1.  The indictment also charged Holmes with one count of first-degree sexual abuse, in violation of D.C. Code §§ 22-3002(a)(1) & (a)(2).  *Id.* at 2.  On January 13, 2022, the grand jury returned a superseding indictment, again charging Defendants with kidnapping in violation of 18 U.S.C. § 1201(a)(1) (Count 1), but adding an allegation that the victim was a minor,[2] and now charging Holmes with two counts of first-degree sexual abuse, in violation of D.C. Code §§ 22-3002(a)(1) & (a)(2) (Counts 3 and 4).  Dkt. 90.  Defendants have filed motions to sever the sexual abuse charges from the kidnapping charge.  Dkt. 65; Dkt. 66; Dkt. 71.[3]  In the alterative, Allgood and Hill move to sever Holmes from their trial.  Dkt. 65; Dkt. 66.

## II.  ANALYSIS

### A.  Improper Joinder Under Rule 8

Defendants first argue that the sexual abuse charges were improperly joined with the kidnapping charge in violation of Federal Rule of Criminal Procedure 8.  That rule provides, in relevant part: "The indictment or information may charge 2 or more defendants if they are

---

[2] Under 18 U.S.C. § 1201(g), if the victim of a federal kidnapping is a minor and the offender is an adult other than a close relative, the offense carries a mandatory minimum sentence of twenty years' imprisonment.

[3] Defendants filed their motions to sever in December 2021, before the government obtained the superseding indictment that includes a new charge of first-degree sexual abuse against Holmes (Count 4).  Defendants have continued to press their severance arguments with respect to the superseding indictment.  *See, e.g.*, Dkt. 126 (Jan. 31, 2022 Hrg. Tr.); Dkt. 129 (Jan 20, 2022 Hrg. Tr.); Dkt. 133 (Feb. 7, 2022 Hrg. Tr.).  For present purposes, then, the Court assumes that Defendants' motions to sever Count 3 of the original indictment apply with equal force to Counts 3 and 4 of the superseding indictment.

alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed R. Crim. P. 8(b); *see also United States v. Jackson*, 562 F.2d 789, 794 (D.C. Cir. 1977) (explaining that Rule 8(b) applies in "cases where there are multiple defendants"). Rule 8(b) is not a demanding rule—it is satisfied when "all [defendants] participated in some way in the series of transactions that link the counts, and not necessarily in each act that makes up the series," *United States v. Johnson*, 46 F.3d 1166, 1172 (D.C. Cir. 1995), so long as "a logical relationship" connects "the acts or transactions within the series," *United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991) (quoting *United States v. Perry*, 731 F.2d 985, 990 (D.C. Cir. 1984)). Courts have construed the rule "broadly in favor of joinder," *United States v. Williams*, 507 F. Supp. 3d 181, 194 (D.D.C. 2020); *see also Nicely*, 922 F.2d at 853, in light of the "general policy favoring joint trials of defendants indicted together, especially when . . . the respective charges require presentation of much of the same evidence, testimony of the same witnesses, and involve [multiple] defendants who are charged, *inter alia*, with participating in the same illegal acts," *United States v. Sutton*, 801 F.2d 1346, 1365 (D.C. Cir. 1986) (citation omitted).

Defendants contend that joining the sexual abuse counts with the kidnapping count violates Rule 8(b) because "the alleged sexual assault occurred after the alleged kidnapping was over and the defendants (other than Holmes) had left," Dkt. 71 at 2, and because "there is no common plan or scheme that encompasses all defendants and all counts," *id.* (emphasis omitted). Neither argument is convincing.

Defendants' first contention turns on a disputed factual premise. According to Defendants, the alleged kidnapping ended when the group returned from Maryland. Any crime that occurred after that time, according to Allgood, Holmes, and Hill, was distinct from the

5

alleged kidnapping, and it is a mistake to join charges relating to any such separate crime to the kidnapping charges.  The crimes of kidnapping and sexual assault, in other words, are not  part of "the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."   Fed. R. Crim. P. 8(b).  The problem with this argument, however, is that the government contends that the kidnapping continued through the sexual assault, even if Holmes was the only member of the original group present at that time.  *See* Dkt. 76 at 15.  The government maintains that T.L. continued to fear for her safety and did not feel free to leave, and the purpose of the kidnapping—to convince T.L. to assist them in obtaining the stolen guns— continued.  That contention, moreover, finds some support in Allgood's alleged threat to T.L. after the group returned from Maryland, *see* Dkt. 67 at 6, and Holmes' alleged threat to "call back the other men to hurt [T.L]" if she did not engage in sexual acts, Dkt. 76 at 7.  The government's theory is also consistent with the indictment, which charges that that the kidnaping took place on April 20–21, 2021, which coincides with the date of the alleged sexual assaults. Dkt. 90 at 1–2.  The government, of course, might be unable to prove that the kidnapping continued through the alleged sexual assault, but, at this early stage of the proceeding, joinder merely turns on the nature of the charges, and the government reasonably contends that the kidnapping charge encompasses the time that Holmes was alone with T.L.

But, even if the alleged kidnapping ended before the alleged sexual assault, joinder is still proper because the charges are connected as part of the same "series of acts."  Fed. R. Crim. P. 8(b).  Much—if not all—of the evidence relevant to the alleged kidnapping bears on the alleged sexual assault.  Under the government's theory of the case, T.L. did not believe that she was free to flee her apartment or to avoid the alleged sexual assault because she feared for her life—and she allegedly feared for her life because she had been kidnapped and threatened with death in the

course of the alleged kidnapping.  The allegations that Holmes "plac[ed] T.L. in reasonable fear

that [she] would be subjected to death, bodily injury, and kidnapping," Dkt. 90 at 2–3, can be

understood only in light of the alleged kidnapping.  Proving the former will require presentation

of the same evidence, witnesses, and alleged conduct as the latter.

The Court, accordingly, concludes that joinder under Rule 8 was proper.

## B.      Permissive Severance Under Rule 14

Defendants also argue that Counts 3 and 4 of the superseding indictment—or, in the

alternative, Holmes—should be severed pursuant to Federal Rule of Criminal Procedure 14(a).

That rule provides: "If the joinder of offenses or defendants in an indictment, an information, or

a consolidation for trial appears to prejudice a defendant or the government, the court may order

separate trials of counts, sever the defendants' trials, or provide any other relief that justice

requires."  Fed. R. Crim. P. 14(a).  The Rule's use of the word "may" vests "[t]he decision to

sever . . . within the discretion of the trial court."  *United States v. Williams*, 507 F. Supp. 3d 181,

194 (D.D.C. 2020).

In considering whether to exercise its discretion under Rule 14(a), the Court is mindful of

the D.C. Circuit's instruction that "motions to sever should be granted 'sparingly.'"  *United*

*States v. Tucker*, 12 F.4th 804, 825 (D.C. Cir. 2021) (per curiam) (quoting *United States v. Celis*,

608 F.3d 818, 844 (D.C. Cir. 2010)).  The Supreme Court, moreover, "has instructed district

courts to grant severance 'only if there is a serious risk that a joint trial would compromise a

specific trial right of one of the defendants, or prevent the jury from making a reliable judgment

about guilt or innocence.'"  *Celis*, 608 at 844 (quoting *Zafiro v. United States*, 506 U.S. 534, 539

(1993)).  This preference in favor of joint trials "promote[s] efficiency and serve[s] the interests

of justice by avoiding the scandal and inequity of inconsistent verdicts," *Zafiro*, 506 U.S. at 537,

and, as discussed, the preference for joint trials is "especially strong" when the evidence, witnesses, and charged conduct overlap. *Tucker*, 12 F.4th at 824 (quoting *United States v. Wilson*, 605 F.3d 985, 1016 (D.C. Cir. 2010)). Thus, "[a]bsent a *dramatic* disparity" between the weight, quantity, or type of evidence against one defendant as compared to another, "any prejudice caused by joinder is best dealt with by instructions to the jury to give individual consideration to each defendant." *Tucker*, 12 F.4th at 825 (quotation marks and alteration omitted).

Hill and Allgood raise three arguments in support of their motions for severance under Rule 14(a). First, they argue that the evidence against Holmes is "far more damaging" than the evidence against them. Dkt. 71 at 2. Second, they contend that there is a risk that "jurors will convict all defendants of kidnapping based on disgust over a[n alleged] predatory sexual assault." *Id.* Finally, they argue that presenting the jury with hearsay evidence that Holmes "threatened to call back the other men to hurt [T.L]" if she did not engage in sexual acts will run afoul of *Bruton v. United States*, 391 U.S. 123 (1968), and its progeny. None of these arguments is convincing.

First, the Court is unpersuaded that the disparity of evidence against Holmes is sufficiently "*dramatic*" to justify severance. *Tucker*, 12 F.4th at 825. Defendants assert that the following evidence is unique to Holmes: (i) "[evidence of] his prior relationship with [T.L.]"; (ii) "the fact that [Holmes] personally drove [T.L] to Maryland"; (iii) "the sexual assault charge itself"; and (iv) "the allegation that Holmes stole the complaining witness's television at the end of the night, after the sexual assault." Dkt. 71 at 3. To be sure, those examples suggest that the government's case against Holmes will differ in certain respects from its cases against Hill and Allgood. But "some disparity in evidence does not compel severance," particularly "when there

8

is substantial and independent evidence of each [defendant's] significant involvement in the [offense]." *United States v. Moore*, 651 F.3d 30, 95–96 (D.C. Cir. 2011) (quoting *United States v. Tarantino*, 846 F.2d 1384, 1399 (D.C. Cir. 1988)).  Here, the evidence against each Defendant is substantial and independent—it includes "surveillance footage, phone records, and cell phone extractions," Dkt. 76 at 18, and, significantly, the minor victim's testimony.  This includes substantial evidence of conduct allegedly committed by Hill and Allgood alone; the government accuses both men, for example, of carrying guns during the kidnapping and of threatening to kill T.L.  According to the government, Hill had a gun "in the small of his back" during the alleged kidnapping, and at one point, he allegedly said that they should kill T.L.  *See* Dkt. 76 at 3.  Allgood, for his part, allegedly threatened to kill T.L. if the stolen guns did not turn up in two or three days.  *Id.* at 7.  The disparity in evidence, accordingly, does not warrant severance.

Second, Defendants have not shown that the presentation of evidence on the sexual abuse charges will so taint the jury as to preclude a fair and impartial verdict on the kidnapping charge. Severance may be warranted to avoid tainting a jury when charges against one defendant are "grossly disparate" from those of his codefendants.  *United States v. Sampol*, 636 F.2d 621, 651 (D.C. Cir. 1980).  In a leading case on this issue, *United States v. Sampol*, for example, the D.C. Circuit held that it was reversible error for the trial court to deny the severance motion of a defendant charged with making false statements to a grand jury and misprision of a felony; his codefendants, by contrast, were charged with "an intentional and extremely violent . . . scheme" to assassinate Orlando Letelier, the former Chilean Ambassador to the United States, and an American associate.  *Id.* at 646.  In so holding, the Court concluded that "[t]he amount and provocative nature of the evidence required to prove the charges against [appellant's] co-defendants so exceeded and varied from that which was necessary or relevant to the charges

against [appellant] that it was unfair to him, and unrealistic to expect a jury not to be influenced by such extraneous testimony in its assessment of his guilt." *Id.* at 647.

The disparity in the charges in this case does not come close to what was at issue in *Sampol*. To be sure, first-degree sexual abuse is an extremely serious charge. But the federal charge of kidnapping a minor is also extremely serious, and, indeed, it carries a mandatory minimum sentence of twenty-years' imprisonment. *See* 18 U.S.C. § 1201(g). The evidence that the government plans to offer in support of that charge, moreover, is harrowing, including evidence that Hill and Allgood carried firearms and both threatened to kill T.L. Sexual assault and kidnapping are, of course, different offenses. But the Court is unpersuaded that the nature of the alleged crimes is so different or that the evidence of sexual assault is so inflammatory that the charges cannot fairly be tried together. There is no reason to believe that the jury will be unable to separate the relevant allegations, and, in any event, measures less drastic than severance— such as a curative instruction—can address any such concern. *See Tucker*, 12 F.4th at 825; *see also Zafiro*, 506 U.S. at 539 ("When the risk of prejudice is high, . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.").

Third, *Bruton v. United States*, 391 U.S. 123 (1968), and its progeny do not require severance. *Bruton* stands for the rule that, in a joint trial, the Confrontation Clause of the Sixth Amendment prohibits the admission of a defendant's confession against him if the confession inculpates a codefendant, unless the codefendant is given the opportunity to cross-examine the confesser. 391 U.S. at 126; *see also Wilson*, 605 F.3d at 1017. The Court in *Bruton* was guided by the principle that "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." 391 U.S. at 135. Hill and

Allgood argue that several of Holmes's out-of-court statements, which the government intends to

offer against him on the sexual abuse charges, would violate the same principle.  Those

statements include: (1) "Holmes [told T.L.], 'I just saved your life.'"; (2) "Holmes threatened to

call back the other men to hurt [T.L.]"; and (3) "Holmes told [T.L.] that he had been driving

quickly because the other men wanted to kill her."  Dkt. 108 at 1–2.

   As an initial matter, the Court notes that *Bruton*'s bright-line rule does not apply to

Holmes's statements.  "Every circuit court that has considered the issue has ruled

that *Bruton* only applies to *testimonial* hearsay," 30 Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure § 6683 (2d ed. 2021) (emphasis added)—that is, "*ex parte* in-

court testimony or its functional equivalent . . . such as affidavits, custodial examinations, prior

testimony that the defendant was unable to cross-examine, or similar pretrial statements that

declarants would reasonably expect to be used prosecutorially," *Crawford v. Washington*, 541

U.S. 36, 51 (2004).  Although the D.C. Circuit has yet squarely to decide this question, it has at

least suggested that *Bruton* applies only to testimonial hearsay.  *See Wilson*, 605 F.3d at 1017

("[T]he appellants do not have a *Bruton* claim because no testimonial statement by Franklin was

ever admitted into evidence.").  Here, however, the statements that Hill and Allgood claim run

afoul of *Bruton* are not testimonial; rather, they were allegedly made to T.L. during the alleged

offenses.  *Bruton* does not apply.

   Nor would the introduction of Holmes's out-of-court statements create a risk of unfair

prejudice to Hill and Allgood that would, apart from *Bruton*, require severance.  As the Court

explained at the hearing on February 7, 2022, when considered in context, Holmes' statements

are "almost identical in nature" to other statements that are likely "to come [into] evidence" and,

thus, they are not "so toxic that it would be impossible to offer a limiting instruction that would

address them."  Dkt. 133 at 28 (Hrg. Tr.).  In particular, the Court noted that the government

intends to offer the following evidence against Hill and Allgood, presumably through T.L.'s

testimony:

- "The men pushed [T.L.] through the apartment searching for the guns. [T.L.] denied knowing anything about guns.  Hill, armed with a firearm he kept in the small of his back, told Holmes that they should kill [T.L.]." Dkt. 67 at 4.

- "Shortly after midnight, the men made [T.L.] utilize her cellular phone to call Witness-1 several times, informing Witness-1 that either the guns would turn up or [T.L.] would be dead."  *Id.*

- "T.L. told [Witness-1], 'where the stuff at, because they are about to kill me,' or words to that effect.'"  Dkt. 1-1 at 4.

- "Once back in Washington, D.C., Allgood displayed a gun and told [T.L.] that if the stolen guns did not show up in two to three days, he would kill her."  Dkt. 67 at 6.

This evidence, which is likely admissible against all of the Defendants, substantially blunts the

risk that any similar statements that are admissible against Holmes alone will so overwhelm the

other evidence in the case that the jurors will be unable to follow a limiting instruction from the

Court.[4]

Finally, apart from the arguments pressed by Hill and Allgood, Holmes argues that he

would be unfairly prejudiced by joining the kidnapping and sexual abuses charges against him in

a single trial.  He argues that, in a trial on both charges, "the jury could very easily conflate the

two crimes [of kidnapping and sexual abuse]" by "us[ing] the evidence that is only relevant to

---

[4] For present purposes, the Court assumes—without deciding—that the statements that Holmes allegedly made to T.L. while alone with her are not admissible against Hill and Allgood.  That, however,  is just an assumption, and the government remains free to argue that the statements were made in furtherance of a conspiracy to use threats and violence to compel T.L. to deliver the stolen guns to the Defendants, or that the statements are admissible on some other theory.

one set of charges to infer guilt of the other set of charges."  Dkt. 66 at 3.  Holmes further

maintains that "the intent for the first count charged (kidnapping) could be [impermissibly]

extended to an intent to" commit sexual abuse. [5]  *Id.*  These assertions are far too speculative,

however, to outweigh the considerations that weigh in favor of trying Holmes on all three counts

in a single trial.  The evidence relating to the alleged kidnapping is of central importance to the

government's theory supporting the alleged sexual assaults; in the words of the indictment,

Holmes committed the sexual assaults "by using force against T.L. and by placing T.L. in

reasonable fear that [she] would be subjected to death, bodily injury, and kidnapping" if she did

not submit.  Dkt. 90 at 2–3.  The allegations are thus intertwined in a manner that weighs heavily

in favor of a single trial.[6]

\*   \*   \*

The Court, accordingly, concludes that Defendants have failed to show that severance is

warranted under Rule 14(a).

---

[5] Holmes also contends that "certain evidence" of T.L.'s behavior, such as evidence that T.L. was "sexually promiscuous," could support "a valid defense to Mr. Holmes on the kidnapping charge."  Dkt. 129 at 59 (Hrg. Tr.).  But, says Holmes, he cannot admit evidence of T.L.'s lifestyle for that purpose if the kidnapping charge and sexual abuse charges are tried together, pursuant to Federal Rule of Civil Procedure 412.  The Court fails to discern how such evidence would be relevant to the kidnapping charge, or how its exclusion would be so prejudicial as to warrant severance.  Without more, the Court declines to grant a severance on that ground.

[6] At the eleventh hour, and more than two months after filing his initial motion to sever, Allgood advances "an additional reason to sever": "Defendants Allgood and Holmes will be forced to present 'mutually antagonistic' or 'irreconcilable' defenses."  Dkt. 132 at 2.  The argument appears to be that Holmes will argue that T.L. consented to sex after he saved her life from the others, thereby pointing fingers at his codefendants.  *Id.*  Even accepting that argument, "[m]utually antagonistic defenses are not prejudicial *per se*" and "can be cured with proper instructions."  *Zafiro*, 506 U.S. at 538, 541.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' motions to sever,

Dkt. 65; Dkt. 66; Dkt. 71; Dkt. 108, are **DENIED**.

**SO ORDERED**.

<u>/s/ Randolph D. Moss</u>
RANDOLPH D. MOSS
United States District Judge


Date:  March 10, 2022