UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DEMARCO L. ALLGOOD, *et al.*,<br><br>*Defendants*. | Criminal Action No. 21-416 (RDM) |

**MEMORANDUM OPINION AND ORDER**

On June 21, 2021, a federal grand jury returned an indictment charging Defendants DeMarco Allgood, Nathaniel Holmes, and Malik Hill ("Defendants") with kidnapping a sixteen-year-old woman, T.L., in violation of 18 U.S.C. § 1201(a). The statute includes a "Special Rule for Certain Offenses Involving Children:" a twenty-year mandatory minimum sentence is required in cases where (1) the victim is under eighteen-years-old, (2) the offender is over eighteen-years-old, and (3) the offender is not a parent, grandparent, brother, sister, aunt, uncle, or other "individual having legal custody of the victim." 18 U.S.C. § 1201(g). The indictment did not refer to the special rule in Section 1201(g) or allege that T.L. was a minor.

On November 29, 2021, Defendants declined to consent to tolling time under the Speedy Trial Act, Dkt. 61 at 1, and asked to proceed to trial as soon as possible. The Court set a trial date for February 9, 2022. *See* Minute Entry (Dec. 3, 2021). On January 13, 2022, a grand jury returned a superseding indictment, which includes the allegations necessary to invoke the "Special Rule for Certain Offenses Involving Children." 18 U.S.C. § 1201(g). As a result, Defendants now face a twenty-year mandatory minimum sentence if convicted.

Defendant Allgood moves to dismiss the superseding indictment, arguing that the addition of the enhancement for allegedly kidnapping a minor constitutes vindictive prosecution. Dkt. 103.  In particular, he alleges that the government sought and obtained the superseding indictment in retaliation for Defendants' invocation of their speedy trial rights.  *Id.* at 5.  Defendants Hill and Holmes move to join in Allgood's motion to dismiss.  Dkt. 109 (Hill); Dkt. 110 (Holmes).  For the following reasons, the Court will **GRANT** Hill and Holmes' motions to join in Allgood's motion but will **DENY** Defendants' motion to dismiss.

## I.   BACKGROUND

### A.   Factual Background

The charges in this case arise from events that allegedly occurred on the night of April 20 and the morning of April 21, 2021.  On the night of April 20, Allgood, Hill, and Holmes allegedly attended a candlelight vigil for their deceased friend, Kerry "Dirty" Odoms, who had been killed.  Dkt. 67 at 1.  The vigil was also attended by a sixteen-year-old woman referred to as T.L., with whom Odoms had allegedly been romantically involved.  Dkt. 103 at 1.  According to the government, before Odoms was killed, he "left a bag containing stolen guns and white powder with [T.L.]"  Dkt. 67 at 2.

The government maintains that, after the vigil, Allgood approached T.L. and asked her whether Odoms "had left anything with her."  *Id.* at 3.  T.L. said that she would check, "and Allgood put his number in [her] phone."  *Id.*  The two parted ways, and T.L. went home.  *Id.*  T.L. tried to ignore Allgood's repeated calls that night, but she "eventually . . . told Allgood that she only had some 'white stuff.'"  *Id.*  Allgood then allegedly told T.L. "to let him know if she found anything else in the house."  *Id.*

Unsatisfied, Allgood, Holmes, and Hill allegedly went to T.L.'s apartment at approximately 11:52 p.m., and Allgood demanded, "where the shit at?" *Id.* at 4. The men then allegedly "pushed [T.L] through the apartment [and] search[ed] for the guns." *Id.* According to the government, when T.L. "denied knowing anything about [the] guns," Hill, who was armed, "told Holmes that they should kill" T.L. *Id.* At that point, T.L. allegedly told the men that she gave the guns to Witness 1, and the men then forced her to call Witness 1 and to tell the witness "that either the guns would turn up or [she] would be dead." *Id.* Witness 1 denied knowledge of the guns, despite T.L.'s pleas to tell the men where the guns were located. *Id.* While the men allegedly continued to confine T.L. in her apartment, Holmes then called Donaesha Hawkins, who arrived at the apartment at approximately 12:24 a.m. *Id.* When Hawkins entered the apartment, Holmes allegedly told her that T.L. "had 'Dirty's shit' and would not tell [them] where it was." *Id.* Hawkins, in turn, "took off her jacket and started to hit and punch [T.L.] all over her body," and, after T.L. fell to the ground, Hawkins proceeded to kick her. *Id.* at 4–5. Allgood allegedly "pulled [T.L.] to her feet by [her] hair so that Hawkins could continue beating [her]." Dkt. 1-1 at 5.

When T.L. told the men that Witness 1 had given "the guns to someone who lived in Maryland," Holmes, Allgood, and Hill allegedly told T.L. "to get into a car so that she could lead them to the location." Dkt. 67 at 5. According to the government, T.L. "agreed to take them to Maryland, but only because she did not feel that she had a choice after having been beaten up by Hawkins and held in her apartment." *Id.* T.L. then directed the men to an apartment complex in Suitland, Maryland, "where she believed the guns were." *Id.* Defendants "did not attempt to enter the apartment [complex]"; instead, "after [T.L.] pointed out the building, the group decided to return to D.C." *Id.* During the drive, Holmes allegedly told T.L. that he protected her from

3

"harm by others" and that he was "driving quickly because the other men wanted to kill her." Dkt. 112 at 3. According to the government, "[o]nce back in Washington, D.C., Allgood displayed a gun and told [T.L.] that if the stolen guns did not show up in two to three days, he would kill her." Dkt. 67 at 6.

Upon returning to T.L.'s apartment, Hill and Allgood "drove away," but Holmes stayed with T.L. *Id.* The government alleges that Holmes then sexually assaulted T.L., in part by "threaten[ing] [T.L.]" that he would "call back the other men to hurt her" if she did not engage in sexual acts. *Id.* at 7. Holmes also allegedly told T.L., "I just saved your life. You could do something . . . just come on" or words to that effect. Dkt. 112 at 4.

**B.      Statutory and Procedural Background**

The federal kidnapping statute, 18 U.S.C. § 1201, provides, in relevant part:

> (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when—
>
>> (1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense;
>>
>> . . .
>>
>> shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

18 U.S.C. § 1201(a)(1). Section 1201 includes a separate provision titled "Special Rule for Certain Offenses Involving Children." 18 U.S.C. § 1201(g). Under that provision, a twenty-year mandatory minimum sentence is required when: (1) "the victim of an offense under [18 U.S.C. § 1201] has not attained the age of eighteen years;" (2) "the offender . . . has attained such age;"

4

and (3) the offender is not "a parent," "a grandparent," "a brother," "a sister," "an aunt," "an uncle," or "an individual having legal custody of the victim." *Id.*

On June 14, 2021, the government charged Defendants by criminal complaint with kidnapping in violation of 18 U.S.C. § 1201(a). Dkt. 1. The complaint also charged Holmes with first degree sexual abuse, in violation of D.C. Code § 22-3002, and it charged Hawkins with kidnapping, in violation of D.C. Code § 22-2001. *Id.* Hawkins was not charged with violating 18 U.S.C. § 1201, which (unlike D.C. Code § 22-2001) requires willful transportation of the victim in interstate commerce. The complaint described T.L. as "a sixteen-year-old female with a date of birth in 2004." Dkt. 1-1 at 1.

On June 21, 2021, a federal grand jury returned a three-count indictment charging Defendants and Hawkins with committing the same offenses listed in the criminal complaint. Dkt. 17. Count One of the indictment charged Defendants with kidnapping in violation of 18 U.S.C. § 1201(a)(1), alleging that

> [b]etween on or about April 20, 2021 and on or about April 21, 2021, within the District of Columbia, Demarco T. Allgood, Nathaniel Holmes, and Malik T. Hill did unlawfully and willingly seize, confine, kidnap, abduct, carry away, and hold T.L. for some purpose, and, in committing and in furtherance of the offense, willfully traveled in interstate commerce from the District of Columbia to the State of Maryland and from the State of Maryland to the District of Columbia and willfully transported T.L. from the District of Columbia to the State of Maryland and from [the] State of Maryland to the District of Columbia.

Dkt. 17 at 1. Count Two of the indictment charged Hawkins with kidnapping, in violation of D.C. Code § 22-2001. *Id.* at 2. Count Three charged Holmes with first degree sexual abuse, in violation of D.C. Code § 22-3002. *Id.*

On June 23, 2021, Defendants appeared before a magistrate judge for arraignment and detention hearings. The government moved to detain Allgood, Hill, and Holmes pending trial on the ground that "no condition or combination of conditions [of release] [would] reasonably

5

assure the safety of any other person and the community." 18 U.S.C. § 3142(e). At Holmes's detention hearing, the magistrate judge observed that the Bail Reform Act establishes a rebuttable presumption that "no condition or combination of conditions will reasonably assure . . . the safety of the community" in cases in which a judicial officer "finds that there is probable cause to believe that the person committed" an enumerated crime, including "an offense involving a minor victim under [18 U.S.C. § 1201]." Dkt. 22 at 10 (Hrg. Tr.). The magistrate judge asked the government whether the rebuttable presumption applied to Defendants, given that they were charged with kidnapping and that the victim was allegedly a minor. *Id*. The government responded that it was "having further officewide discussions over – holistically with kidnapping" and that it was "not asking for a rebuttable presumption at this time." *Id.* The magistrate judge ordered that each Defendant be detained pending trial. *Id.*

Over the next several months, the government produced multiple rounds of discovery to the Defendants. *See* Dkt. 58 at 1. On November 29, 2021, the parties filed a joint status report indicating that "[c]ounsel for each defendant requests a trial date and further requests a briefing schedule for motions, oppositions, and replies." Dkt. 61 at 1. Four days later, on December 3, the Court held a scheduling conference, at which Defendants reiterated their desire to proceed to trial as soon as possible. The Court set a trial date of February 9, 2022. *See* Minute Entry (Dec. 3, 2021).

On January 7, 2022, the government filed a motion to continue the trial. Dkt. 83. Among the grounds cited for seeking a continuance, the government represented that "an anticipated grand jury witness [was] infected with COVID-19 and cannot testify," thus preventing "the government [from] seek[ing] a superseding indictment." *Id.* at 2. In a footnote, the government explained that "[t]he kidnapping in this case involved a minor," and, "[t]herefore, the defendants

6

are subject to a 20-year mandatory minimum sentence." *Id.* at 2 n.3. The government further asserted that "each defendant was formally notified of the government's intent [to seek a superseding indictment] in December 2021" and that "[t]he superseding indictment will not charge any conduct for which counsel for each defendant has not been on notice." *Id.* at 3 n.3. Defendants opposed the motion. *See* Dkt. 89 (Hill); Dkt. 92 (Allgood); Dkt. 93 (Holmes).

On January 13, 2022, a federal grand jury returned a four-count superseding indictment. Dkt. 90. The superseding indictment is similar to the original indictment—it continues to charge Defendants with kidnapping under federal law, to charge Hawkins with kidnapping under D.C. law, and to charge Holmes with first degree sexual abuse. *Id.* It differs from the original in several material respects, however, including that (1) Holmes is now charged with two counts of first degree sexual abuse, and (2) Count One of the superseding indictment charges Allgood, Holmes, and Hill with "Kidnapping of a Minor and Aiding and Abetting in violation of [18 U.S.C. §§] 1201(a)(1), 1201(d), 1201(g), and 2" and alleges the elements of the special rule in Section 1201(g). *Id.* at 1–3. The superseding indictment also added an enhancement based on T.L.'s age to the D.C. law charge against Hawkins. *Id.* at 2.

On January 24, 2022, Allgood filed a motion to dismiss Count One of the superseding indictment, arguing that the government impermissibly asked the grand jury to add the federal enhancement for alleging kidnapping of a minor simply to punish Defendants for asserting their rights to a speedy trial. Dkt. 103. Holmes and Hill moved to join in Defendant Allgood's motion.[1] Dkt. 107 (Holmes); Dkt. 109 (Hill). The Court heard argument on the motion on

---

[1] On January 31, 2022, the government informed Allgood, Hill, and Holmes that "the case as to Ms. Hawkins has been resolved." *See* Minute Entry (Jan. 31, 2022).

February 7, 2022. That same day, for reasons unrelated to the motion to dismiss, the Court continued the trial in this case, which is now set to commence on August 22, 2022.

## II.  ANALYSIS

Federal courts have long recognized that enforcement of the nation's criminal laws is "a 'special province' of the Executive." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Prosecutors have "broad discretion to enforce the law, and their decisions are presumed to be proper absent clear evidence to the contrary." *United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017) (citing *Armstrong*, 517 U.S. at 464). But that discretion is not without limitation; the Due Process Clause of the Fifth Amendment protects criminal defendants from "vindictive prosecution" by "prohibit[ing] prosecutors from 'upping the ante' by filing increased charges in order to retaliate against a defendant for exercising a legal right." *Id.* at 798–99 (quoting *Blackledge v. Perry*, 417 U.S. 21, 27–28 (1974)).

To succeed on a claim of vindictive prosecution, a defendant must show "that the increased charge was 'brought *solely* to "penalize" [him] and could not be justified as a proper exercise of prosecutorial discretion.'" *Id.* at 799 (emphasis in original) (quoting *United States v. Goodwin*, 457 U.S. 368, 380 n.12 (1982)). A defendant may make that showing in two ways. First, he may show "actual vindictiveness" by offering "objective evidence that a prosecutor acted in order to punish him for standing on his legal rights." *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987). Second, he may "rely on a presumption of vindictiveness[] when the facts indicate a 'realistic likelihood of vindictiveness,'" *id.*—that is, when the facts indicate that "the second indictment was 'more likely than not attributable to the vindictiveness on the part of' the Government," *United States v. Meadows*, 867 F.3d 1305, 1311 (D.C. Cir. 2017) (quoting *United States v. Gary*, 291 F.3d 30, 34 (D.C. Cir. 2002)). If a defendant offers evidence

8

sufficient to support a presumption of vindictiveness, "the burden shifts to the government to produce 'objective evidence' that its motivation in charging the defendant was lawful." *Id.* at 1312.  Then, if the government produces such evidence, the burden shifts back to the defendant, whose "only hope is to prove that the justification is pretextual and that actual vindictiveness has occurred." *Meyer*, 810 F.2d at 1245.

Defendants contend that that the kidnapping charge should be dismissed under both standards: according to Defendants, there is both "direct evidence" of vindictive prosecution, Dkt. 103 at 10, and, alternatively, the presumption of vindictiveness should apply, *id.* at 1–9.  The Court will address each argument in turn.

**A.     Actual Vindictiveness**

Defendants argue that "the record in this case supports a finding of [actual] vindictiveness." *Id.* at 9.  More specifically, they posit that, "in a December 10, 2021 call with defense counsel, the supervising AUSA specifically agreed and acknowledged that a twenty-year mandatory minimum sentence in this case would not be in society's interests." *Id.* at 9–10.  That alleged statement provides proof of actual vindictiveness, Defendants contend, because "[t]he central question in a pretrial vindictiveness motion is whether a new charge truly reflects 'the prosecutor's normal assessment of the societal interest in prosecution.'" *Id.* at 9 (quoting *Goodwin*, 457 U.S. at 380).

In support of this argument, Allgood submits a declaration with his motion to dismiss from his counsel, Matthew Peed, asserting that—upon learning of the government's intent to charge violations of Section 1201(g) in a superseding indictment—Peed spoke with Assistant U.S. Attorney April Russo about his view that charging Defendants with violating Section 1201(g) would be unjust.  Dkt. 103-1 at 1–2 (Peed Decl. ¶¶ 2, 4).  According to Peed,

9

Russo "acknowledged that this case was not within the heartland of kidnapping cases for which the mandatory minimum sentence was designed." *Id.* at 2 (Peed Decl. ¶ 5). Peed also asserts that Russo "specifically agreed with [his] assessment that a twenty-year mandatory minimum was not appropriate in terms of societal interest." *Id.* Russo added, however, that "given the request of trial counsel to supersede the indictment and apply the enhancement, she would probably approve the request." *Id.*

In response to the motion to dismiss and Peed's declaration, the government submitted a declaration from Russo, who attests that she "reviewed the description of th[e] phone call in [Peed's] declaration" and, while she does not "recall every specific of what was discussed," she "do[es] not believe [she] ever used the term 'societal interests' on the call." Dkt. 122-2 at 1 (Russo Decl. ¶ 3); *see also* Dkt. 172-2 at 1 (Russo Decl. ¶ 3). Moreover, Russo asserts that she "likely agreed that a sentence less than the 20-year mandatory minimum could be appropriate to resolve the case in advance of trial." Dkt. 172-2 at 1 (Russo Decl. ¶ 3). But, according to Russo, "[i]n no way did [she] intend to signal to counsel on the call that the use of the mandatory-minimum enhancement was unlawful, inappropriate, or otherwise unsuitable in this case." *Id.*

Peed, in turn, submitted a supplemental declaration. Dkt. 128-1 (2d Peed Decl.). In that declaration, he attests that "the call was not about, and was not in the context of, any plea negotiations." *Id.* at 1 (2d Peed Decl. ¶ 4). He further asserts that, in his view, "Russo agreed with [his] assertion that irrespective of any plea, a twenty-year sentence in this case [is] not appropriate in light of society's interests." *Id.* at 2 (2d Peed Decl. ¶ 5). Peed appended to the supplemental declaration an email dated December 10, 2021, from him to the other counsel for Defendants, in which he stated that he spoke to Russo and that "she acknowledged that 20 years is not appropriate." Dkt. 128-2 at 1. In the email, Peed noted that Russo "still [thought] they

10

[would] supersede, but said she [was] at least going to look into whether they could avoid the mandatory minimum by not charging the age as an enhancement." *Id.* Russo "said that some mandatory minimums can't be avoided by charging decisions, and she [was] getting higher ups to look into it." *Id.*

In light of these competing submissions, the Court asked counsel for Defendants at a status conference whether they were seeking an evidentiary hearing or whether, more broadly, they were "asking [the Court] to do anything else from an evidentiary perspective[.]" Dkt. 133 at 16 (Hrg. Tr.). Counsel for each Defendant indicated on the record that they did not believe an evidentiary hearing was necessary and that the Court could make any necessary findings on the papers. *Id.*; *see also id.* at 27 (Hrg. Tr.).

Having reviewed the parties' submissions, and in light of their representations on the record, the Court finds that Defendants have not made the "exceedingly difficult" showing that the government's actions "were designed to punish [them] for asserting [their] legal rights." *Meadows*, 867 F.3d at 1311 (quotation marks omitted). As an initial matter, the parties dispute whether Russo "agreed . . . that a twenty-year mandatory minimum was not appropriate in terms of societal interest," as Peed attests, Dkt. 103-1 at 2 (Peed Decl. ¶ 5), and the Court has no reason to credit Peed's version of the telephone conversation over Russo's—or vice versa. The most likely scenario is that Peed and Russo simply misunderstood one another. But the Court's determination need not turn on whether Russo made the alleged statement because, even if she did, Defendants' actual vindictiveness argument would fail.

To start, the Court is unpersuaded by the premise of Defendants' argument. According to Defendants, the "central question in a pretrial vindictiveness motion is whether a new charge truly reflects 'the prosecutor's normal assessment of the societal interest in prosecution.'"

11

Dkt. 103 at 9 (quoting *Goodwin*, 457 U.S. at 380 n.11).  A more accurate statement of the law, however, is that the central question is whether "[a] charging decision . . . results *solely* from the defendant's exercise of a protected legal right."  *Goodwin*, 457 U.S. at 380 n.11 (emphasis added); *see also Slatten*, 865 F.3d at 799.  To be sure, a prosecutor's denial of any societal interest in a charging decision may create an inference that the charge was brought for vindictive reasons.  But to show "actual vindictiveness," a defendant must offer objective evidence—not evidence that creates an inference—that a prosecutor "acted in order to punish him for standing on his legal rights."  *Meyer*, 810 F.2d at 1245 (citing *Goodwin*, 457 U.S. at 380–81, 384 & n.19).

      Here, there is no objective evidence (or, indeed, any evidence at all) that Russo was motivated by Defendants' decision to assert their rights to a speedy trial.  Neither the Peed declarations nor the Russo declaration even hints at any consideration of Defendants' right to a speedy trial.  The Peed declaration itself provides a straightforward explanation: trial counsel had concluded that "the facts met the elements of the offense," and, even if "this case was not within the heartland of kidnapping cases for which the mandatory minimum sentence was designed," Russo was inclined to defer to the request of trial counsel to supersede.  *See* Dkt. 103-1 at 2 (Peed Decl. ¶ 5).

      Crediting that description of the conversation, the Court finds that the decision to supersede did not originate with Russo, but with trial counsel.  There is *no* evidence, however, that *trial counsel* believed that the enhancement was contrary to "society's interest."  To the contrary, trial counsel attests that she discussed with a "supervisory AUSA" the need to file a superseding indictment adding the allegations required under 18 U.S.C. § 1201(g) months *before* Defendants asserted their right to a speedy trial. Dkt. 172-1 at 1 (Buckner Decl. ¶ 3).  Peed attests that "government[] trial counsel did not dispute [his] assertion that the enhancement was

12

not in society's interest," Dkt. 103-1 at 1 (Peed Decl. ¶ 3), but the failure to join issue with opposing counsel during an informal conversation is a far cry from assent; were the law otherwise, discussions between counsel would either become endless or would not occur at all. In any event, there is no reason to believe that government trial counsel acted because (much less "solely" because) Defendants asserted their speedy trial rights.

Accordingly, the Court concludes that Defendants have failed to show actual vindictiveness here.

**B.      Presumption of Vindictiveness**

The bulk of Defendants' motion argues that a presumption of vindictiveness applies. "In presumption cases, the Supreme Court has distinguished between pre-trial and post-trial settings." *Slatten*, 865 F.3d at 799 (citing *Goodwin*, 457 U.S. at 381). In the pre-trial context, "'the prosecutor's assessment of the proper extent of prosecution may not have crystallized,' so an increase in charges may be the result of additional information or further consideration of known information, rather than a vindictive motive." *Id.* (quoting *Goodwin*, 457 U.S. at 381). Moreover, the "routine exercise of many pre-trial rights also weakens any inference of vindictiveness, *i.e.*, that a prosecutor would retaliate simply because a defendant sought a jury trial or pleaded an affirmative defense." *Id.* Thus, in the pre-trial context, it is not enough for a defendant to point to an increase in charges alone; rather, "a defendant must provide additional facts sufficient to show that 'all of the circumstances, when taken together, support a realistic likelihood of vindictiveness.'" *Id.* (quoting *Meyer*, 810 F.2d at 1246). Put differently, a defendant must point to "something more" than an increase in charges that followed the exercise of his constitutional or statutory rights. *Meadows*, 867 F.3d at 1313.

13

Here, Defendants rely on the following facts to show that "something more" than an increase in charges occurred here: (1) the government's decision to supersede and to bring a charge carrying "a twenty-year mandatory minimum was announced just five days after the defendants invoked their trial rights and the Court set a trial date, with no intervening events;" (2) "it was based on information the government long knew;" (3) it "occurred with no prior warning six months into the case;" and (4) it "was not a product of plea negotiations, which were not occurring at the time."[2]  Dkt. 103 at 5.  According to Defendants, "[t]hese circumstances reflect, at a minimum, a realistic likelihood that the government was vindictively 'upping the ante' in response to the defendants asserting their right to a speedy trial and obtaining a firm trial date."  *Id.*

The problem with Defendants' argument is that it is at odds with the Supreme Court's decision in *United States v. Goodwin*, 457 U.S. 368 (1982).  There, the defendant was indicted and convicted on a felony charge after he refused to accept a guilty plea and requested a trial by jury on pending misdemeanor charges.  *Id.* at 370.  The defendant argued that the facts supported a presumption of vindictive prosecution.  *Id.* at 371.  The Supreme Court disagreed on the ground that "[a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution."  *Id.* at 382.  In other words, "[a]n initial decision should not freeze future conduct."  *Id.*  Although there are circumstances in which a defendant can show that a presumption of vindictiveness is warranted, the defendant in *Goodwin* failed to make that showing because "the only evidence [the defendant

---

[2] Defendants do not cite the telephone call between Peed and Russo as evidence that the presumption of vindictiveness applies.  Even if they had cited that conversation, however, the Court would not place significant weight on that evidence in determining whether a presumption of vindictiveness applies for the same reasons the Court cited in its discussion of actual vindictiveness.

14

was] able to marshal in support of his allegation of vindictiveness [was] that the additional charge was brought at a point in time after his exercise of a protected legal right." *Id.* at 382 n.15.

The pertinent facts that the Supreme Court rejected as insufficient in *Goodwin* are similar to those that Defendants rely on here. In both cases, the government increased the charges against the defendants shortly after they asserted their right to a jury trial. *See id.* at 371. In both cases, moreover, the government brought additional charges against the defendants based on facts that were known before they invoked their rights. *See id.* at 371 n.2 (listing the prosecutor's reasons for bringing increased charges). In neither case did the government warn the defendants of the possibility that they might face increased charges if they chose to go trial. And, in neither case did the government decide to bring additional charges as part of a plea negotiation; in *Goodwin*, the defendant emphasized that "the additional charge . . . was brought outside the context of plea negotiation." *Id.* Against that backdrop, the Court concludes, as the Supreme Court did in *Goodwin*, that the relevant circumstances fail to support a realistic likelihood of prosecutorial vindictiveness.

Defendants argue that this case more closely resembles *United States v. Meyer*, 810 F.2d 1242 (D.C. Cir. 1987), a case in which the D.C. Circuit affirmed the dismissal of charges on vindictive prosecution grounds. *Meyer* involved the prosecution of approximately 200 people who were arrested for demonstrating outside of the White House. *Id.* at 1243. The government presented the demonstrators with two options: (1) plead guilty and pay a $50 fine, or (2) proceed to trial and face a $500 penalty and up to six months' imprisonment. *Id.* at 1243–44. Thirty-six demonstrators chose to go to trial, but the district court dismissed the increased charges against them on the ground of prosecutorial vindictiveness, and the D.C. Circuit affirmed. *Id.* at 1244.

15

In *Meyer*, the court of appeals began its analysis by comparing the case to *Goodwin* and "noting a set of predicate facts that *Goodwin* and the case at bar [had] in common." *Id.* at 1246. As here, however, the court further recognized that "[t]hese circumstances alone, of course, fail to support a realistic likelihood of prosecutorial vindictiveness." *Id.*

The court in *Meyer* went on to hold that "*other* circumstances in the case"—circumstances that are not present here—"suggest[ed] a retaliatory motivation." *Id.* (emphasis added). The "most important" factor was "the government's disparate treatment of the defendants who elected to go to trial and the defendants who elected to forego their trial rights." *Id.* No such disparate treatment has occurred here; all three remaining Defendants face the increased kidnapping charge.[3] Nor are the other facts that the court relied upon in *Meyer* present in this case—namely, "[t]he simplicity and clarity of both the facts and law underlying [the] prosecutions;" the government's effort "to drop the charge that it had so recently added to each information" at "the very beginning of the hearing on prosecutorial vindictiveness;" and the government's interest in avoiding "the annoyance and expense of prosecuting these minor cases at a potentially drawn-out trial" involving thirty-six defendants. *Id.* at 1246–47. Indeed, the *Meyer* court emphasized—and the D.C. Circuit subsequently confirmed—that the holding in *Meyer* was "limited to the precise circumstances of [the] case." *Id.* at 1248; *see also Meadows*, 867 F.3d at 1314 ("[T]he facts in *Meyer* were unusual."). In light of the absence of similar circumstances here, the Court has little difficulty concluding that *Meyer* is inapposite.

Defendants' reliance on *Simms v. United States*, 41 A.3d 482 (D.C. 2012), is equally misplaced. In *Simms*, the District of Columbia Court of Appeals held that the trial court erred by

---

[3] Although the case has been resolved as to Hawkins, *see* Minute Entry (Jan. 31, 2022), she was never charged with kidnapping under federal law. Furthermore, Hawkins was charged in the superseding indictment with a minor victim enhancement under D.C. law. *See* Dkt. 90 at 2.

16

failing to apply a presumption of vindictiveness. *Id.* at 483. Some of the circumstances that arose in *Goodwin*, *Meyer*, and this case were present in *Simms*, but one "additional fact . . . tip[ped] the balance" in favor of applying the presumption of vindictiveness: the government's "announcement that it [was] ready to try [the] case." *Id.* at 491. In *Simms*, the parties had appeared in court for what should have been the first day of trial; at that point, the government announced "unequivocally" that it was ready to proceed to trial, but the defense "informed the court that it was not ready," which resulted in a continuance. *Id.* at 484–85. Four days later, the government brought increased charges against the defendant. *Id.* at 485. The court considered that fact dispositive because, in its view, "the very reasons the Supreme Court [in *Goodwin*] determined that the application of a presumption of vindictiveness should be limited pretrial[] do not pertain" when the government "signal[s] that it believes that the back-and-forth of pretrial litigation is over." *Id.* at 491.

*Simms* is distinguishable from this case. Unlike in *Simms*, prior to superseding the indictment, the government had not "unequivocally" announced that it was ready to proceed to trial—and indeed, to date, it has not done so. To be sure, the government has at times represented that it *would* be ready, if necessary, to proceed to trial if the Court set a trial date over its objections. *See* Dec. 3, 2021 Hrg. Tr. (Rough at 17–18). But the government also represented that it needed more time. During the hearing in which the Court set the February 7, 2022 trial date, for example, the prosecutor represented that "DNA testing is still pending and there's still discovery to turn over" and that "[t]he [g]overnment's investigation is ongoing." *Id.* (Rough at 14–15). Moreover, the government subsequently moved to continue that trial date. Dkt. 83. Accordingly, *Simms* is unhelpful to Defendants.

At bottom, for the presumption of vindictiveness to apply, Defendants must provide evidence of "something more" than an increase in charges following the invocation of a legal right. *Meadows*, 867 F.3d at 1313. In *Meyer* and *Simms*, unusual circumstances provided the "something more." The same is not true here. Defendants, accordingly, have failed to show that the presumption applies.

Because the Court concludes that the presumption of vindictiveness does not apply, it need not assess whether the government has "come forward with objective evidence justifying [its] prosecutorial action." *Meyer*, 810 F.2d at 1245. But, in any event, the government's explanation of its decision to supersede is convincing. The prosecutor in this case, Assistant U.S. Attorney Angela Buckner, explained the government's position at length at a hearing before the Court, *see* Dkt. 126 at 70–73 (Hrg. Tr.), and in a written declaration, *see* Minute Entry (Feb. 1, 2022); Dkt. 172-1 (Buckner Decl.). According to Buckner, on June 22, 2021, "the night before the detention hearings, [she] realized that the rebuttable presumption under the [Bail Reform Act] was not applicable because the indictment did not charge kidnapping of a minor." Dkt. 172-1 at 1 (Buckner Decl. ¶ 2). Following that realization, she and her colleagues "collectively noted that not including the language [in the original indictment] regarding the victim's status as a minor was unintentional and an error," and they "agreed that [they] would eventually have to supersede the indictment, adding both the requisite language regarding the victim's age and subsection (g) of [Section 1201]." *Id.* (Buckner Decl. ¶ 3). But, "[b]ecause [the government] hoped to identify additional perpetrators and bring charges as appropriate, [it] waited to supersede the indictment" while its investigation continued. *Id.* ¶ at 2 (Buckner Decl. ¶ 5). In other words, the government "made a judgment call regarding how many different times [it was] going to supersede the indictment, hoping to supersede once with all of the information

that [it] had planned to add to the case." Dkt. 126 at 71–72 (Hrg. Tr.). "Once the trial date was set," the government "had to stop [its] investigation and make some decisions." *Id.* at 72 (Hrg. Tr.). One of those decisions was to supersede the indictment. *Id.* The Court sees no reason to doubt this explanation, made under the penalty of perjury, and it lends further support to the Court's conclusion that the second indictment was not "more likely than not attributable to . . . vindictiveness." *Meadows*, 867 F.3d at 1311 (quoting *Gary*, 291 F.3d at 34).

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the motions to join in Defendant Allgood's motion to dismiss, Dkt. 109; Dkt. 110, are **GRANTED**, and the motion to dismiss for vindictive prosecution, Dkt. 103, is **DENIED.**

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  July 7, 2022